Estella Collins v. Commissioner.
Collins v. Commissioner
Docket No. 15808.
United States Tax Court
1950 Tax Ct. Memo LEXIS 312; 9 T.C.M. (CCH) 14; T.C.M. (RIA) 50011; January 10, 1950
*312 Woodrow S. Wilson, Esq., for the petitioner. Byron M. Coon, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income tax for the calendar year 1945. Deficiency was determined in the amount of $1,407.31. Respondent asserts penalty of $64.55 under Section 293 (a), Internal Revenue Code. The issue presented is the deductibility of items disallowed, for contributions, interest, taxes, medical expenses, and business expenses. The petitioner's return for 1945 was filed with the collector for the sixth district of California. She resides at Encino, California, and is engaged in the business of real estate broker. The petitioner's return showed total receipts of $7,624.16 from the real estate business, $3,698.70 business expense, resulting in gross profit of $3,925.46. Deductions were claimed as follows: Contributions $331.50; interest $250; taxes $341.10; and $28.73 medical expenses, making total deductions of $951.33, and net income of $2,974.13. It appears that deductions $125of were allowed, as follows: $84 contributions; $35 taxes; and $6 real estate license; total $125. [The Facts] The case was tried *313 on April 12, 1949. On March 11, the petitioner had received notice from the respondent's counsel that all available receipts, cancelled checks, and documents relating to deductions should be assembled for use at the hearing, the date thereof being stated as April 4, 1949. On March 17, 1947, the petitioner filed with the collector a verified statement, inter alia: " I am well covered with receipts and records." No documentary evidence of any kind was offered by the petitioner, except that her Federal income tax return for 1945 is a joint exhibit. The petitioner's income tax return was prepared by a party who prepared returns from information noted down by him (on a printed sheet, showing various items of contributions, interest, etc., with corresponding blanks for the amounts thereof) in a conference with her. The printed sheet was produced by petitioner's counsel at trial. It contained detailed information as to contributions; also one item under "interest" as follows: "Mortgage on Home $250.00. Personal"; also under taxes the following items: Real estate $250.20; personal property $4; licenses $11.90; sales tax $75. Blanks to show losses, bad debts, and "other Deductions" were not *314 filled in. On the back appears: "Dr. Pace La 10.00; H & A 80.00; Pre Med - Vita 100.00; Dr. Spalding Reseda 35.00" total $225. The petitioner conducted her real estate business largely by advertising in the newspapers and by telephone. She used one room in her home as an office. During most of 1945 this was at 833 1/2 West 41st Street, Los Angeles. Her activities in real estate were in the main in and around Crenshaw Villa, a part of Hawthorne, about 15 or 20 miles south of Los Angeles. She had a 1936 model Plymouth automobile worth $700 or $800. She used this in her real estate business, driving about 50 miles a day including Sundays. She employed a woman several days a week, but not every day, for about six months, paying $1 an hour and transportation. During the year 1945 she purchased, improved, and sold nine houses; that is, she purchased the equity in each for from $500 to something less than $1,000. She incurred various expenses in connection with such improvement, including utilities, office expenses, contract labor, real estate license, and insurance. Contract labor included redecorating, painting, and sanding floors, on the houses purchased and sold. Petitioner's gross *315 income during 1945 was from the sale of the nine pieces of property and commissions on the sale of other properties. She sold about ten properties, in addition to her own, and received commissions thereon. The properties sold on commission averaged about $3,800. She received 5 per cent commission. The petitioner moved from West 41st Street to "The Valley" in the latter part of July 1945. She stayed in that house only a few days and moved again, had her furniture stored, and moved in with some friends until she could find a house. In the move, after she moved to The Valley, papers and records which she had previously had were lost by the mover except about 25 letters and four cancelled checks. These checks were present at the trial but were not offered in evidence. [Opinion] After a detailed examination of the evidence adduced, we find that the petitioner, during 1945, expended the following amounts: Contributions
Church
$ 75.00
Red Cross
20.00
Salvation Army
20.00
China Relief
3.00
U.S.O.
37.50
Tuberculosis Society
5.00
War Chest
12.00
Examiner War Wounded Fund
20.00
Father Flanagan's School
5.00
Total
$ 197.50
Interest
$ 250.00
Taxes
Real estate taxes
$ 180.00
Personal property tax
4.00
Car license tax
11.90
Sales tax
60.00
Total
$ 255.90
Business Expense
Adveristing
$ 500.00
Telephone
150.00
Expense of automobile
700.00
Utilities
100.00
Office expense
200.00
Contract labor
150.00
Real estate license
6.00
Preparation income tax return
25.00
Total
$1,831.00
Medical and Dental Expense
Dr. Pace
$ 10.00
Health & Accident Insurance
40.00
Medicine
40.00
Dr. Spaulding
20.00
Total
$ 110.00
*316 The evidence in this case is in an unsatisfactory condition. The petitioner contended that she had, at the time the income tax return was made out, given to one Jackson who made it out, the information contained thereupon, from her records, but that she had lost all of those records except four checks and about 25 letters, in the course of a move. She, therefore, testified only from memory. Her attorney furnished her the items from the return but was not allowed to suggest to her the amounts. Neither the four checks nor any of the letters were placed in evidence by the petitioner. The petitioner had stated to the collector on March 17, 1947, that she was "well covered with receipts and records," and the petitioner stated that the move "must have been about two years ago now." But her daughter testified that the last time her mother had moved was in April 1947 and the move at which the papers were lost appears from all the evidence to have been at an earlier time. We are unconvinced that the papers lost in the move were the reason for the petitioner's inability to support her contentions. She had ample time after such a move to obtain duplicate receipts or other evidence to support *317 her contentions. Asked why she had not done so, her explanation was, variously, that she did not think it was necessary, that she knew she could not get all the receipts so "I wasn't going out and bring a handful when I knew I would have - " and that it was impossible for her to get receipts for all of this, and that "I didn't see the necessity of bringing some, a few, when I should have many"; also "If I gathered up a few here and there, here and there, it wouldn't make any difference, I couldn't get all of them." Also she contended that she had given Mr. Jackson the facts set forth on the return; yet her attorney produced what appears on its face to be Jackson's work sheet, a printed form with blanks for contributions, interest, taxes, etc., in great detail; and although she had testified, in effect, that he had noted down the information given him, the printed work sheet contains only information as to contributions, in detail, together with one item of interest and four items of taxes, in addition to information as to medical and dental expenses. That the sheet was the work sheet from which the return was prepared is apparent from the fact that the items of contributions are identical *318 with those appearing on the return. It seems clear, however, that the other expenses, much the more important element in this case, that is, the business expenses, were not taken down by Jackson on his work sheet, though under "Other Deductions" thereon appear blanks for items such as claimed by the petitioner among business expenses, e.g., "car used in connection with business," also "telephone" and "accident insurance." All of this leaves us without conviction that the business expenses of petitioner could ever have been supported by her, despite her contentention that she gave them, correctly, to Jackson. Failure to make any effort to get duplicate receipts or other proof is under all the circumstances before us highly significant. Moreover, the petitioner's testimony contains indication of exaggeration. Thus she testified that contract labor amounted to several hundred dollars; whereas the return itself claims only $180 on that item. Her demeanor on the stand indicated to us considerable willingness to be categorical rather than accurate. The petitioner's income under the testimony was from the sale of nine small houses which she purchased and commissions on about ten others, at *319 5 per cent. The evidence before us fails to indicate that the expense of such a limited amount of sales was as much as the petitioner contends; and it is clear to us that she made no reasonable effort to sustain her claims by receipts or other evidence but preferred to rely solely upon her own statements. We have, nevertheless, under the doctrine announced in Cohan v. Commissioner, 39 Fed. (2d) 540, though not bearing as heavily upon the petitioner as that case might justify, found that the petitioner incurred the expenses for contributions, interest, business expenses, and medical and dental expenses as hereinabove set forth and allow deductions in those amounts The medical expenses will, of course, be considered in the light of Section 23 (x) of the Internal Revenue Code, in entering decision. The respondent asserted the 5 per cent penalty under Section 293 (a) of the Internal Revenue Code and we think it obvious under all of the circumstances before us that some part of the deficiency is due to negligence as therein provided. The penalty will, therefore, be allowed. Decision will be entered under Rule 50.